**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Kerry Kidd

    v.                                    Civil No. 11-cv-350-JL

Edward Reilly, Warden,
Northern New Hampshire
Correctional Facility


**REPORT AND RECOMMENDATION**


     Kerry Kidd petitions for a writ of habeas corpus.  28
U.S.C. § 2254.  He asserts fourteen grounds to support his claim
of ineffective assistance of counsel.  Before me for a report
and recommendation is respondent's motion for summary judgment.
Kidd objects.  For the reasons that follow, I recommend that
respondent's motion be granted.


**The Legal Standard**

     A federal court may grant habeas-corpus relief "only on the
ground that [a petitioner] is in custody in violation of the
Constitution or laws or treaties of the United States."  28
U.S.C. § 2254(a).  The power of the federal courts to grant
habeas-corpus relief to state prisoners has been significantly
limited by passage of the Anti-Terrorism and Effective Death
Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Under that
statute, when a prisoner brings a claim in federal court that

"was adjudicated on the merits in State court proceedings," 28

U.S.C. § 2254(d),

> [f]ederal habeas relief may not be granted  . . .
> unless it is shown that the earlier state court's
> decision "was contrary to" federal law then clearly
> established in the holdings of this Court, [28 U.S.C.]
> § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412
> (2000); or that it "involved an unreasonable
> application of" such law, § 2254(d)(1); or that it
> "was based on an unreasonable determination of the
> facts" in light of the record before the state court,
> § 2254(d)(2).

Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (parallel

citations omitted); see also Morgan v. Dickhaut, 677 F.3d 39, 46

(1st Cir. 2012).  As the Harrington Court went on to explain:

> If this standard is difficult to meet, that is
> because it was meant to be.  As amended by AEDPA, §
> 2254(d) stops short of imposing a complete bar on
> federal court relitigation of claims already rejected
> in state proceedings.  Cf. Felker v. Turpin, 518 U.S.
> 651, 664 (1996) (discussing AEDPA's "modified res
> judicata rule" under § 2244).  It preserves authority
> to issue the writ in cases where there is no
> possibility fairminded jurists could disagree that the
> state court's decision conflicts with this Court's
> precedents.  It goes no farther.  Section 2254(d)
> reflects the view that habeas corpus is a "guard
> against extreme malfunctions in the state criminal
> justice systems," not a substitute for ordinary error
> correction through appeal.  Jackson v. Virginia, 443
> U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in
> judgment).  As a condition for obtaining habeas corpus
> from a federal court, a state prisoner must show that
> the state court's ruling on the claim being presented
> in federal court was so lacking in justification that
> there was an error well understood and comprehended in
> existing law beyond any possibility for fairminded
> disagreement.

Harrington, 131 S. Ct. at 786-87 (parallel citations omitted).

**Background**

Following a jury trial in the New Hampshire Superior Court, Kerry Kidd ("Kidd") was convicted of committing an aggravated felonious sexual assault on A.H., an eleven-year-old friend of his stepdaughter, B.B.  The following factual recitation is drawn from testimony at Kidd's trial.

In June of 2001, A.H. accompanied B.B. and several members of B.B.'s family on a camping trip.  Among the adults on the trip were Kidd and B.B.'s mother, Tammy Kidd.[1]  On the last night of the trip, after A.H. and B.B. had retired for the evening, Kidd entered the tent they were sharing, slipped into A.H.'s sleeping bag (which was positioned near the entrance of the tent), rubbed one or more parts of her body, and then pulled down her pajama bottoms and had intercourse with her.  The assault took approximately five minutes, and Kidd left the tent immediately afterward.  The next morning, A.H. woke up before B.B. did, and wrote her a letter about the assault and left it near B.B.'s pillow.  A.H. also spoke with B.B. about what had happened the night before, but did not tell anyone else about Kidd's getting into her sleeping bag until several months later. Also on the morning after the assault, Kidd apologized to A.H.

---

[1] After the events giving rise to Kidd's conviction, he and Tammy Kidd were divorced.  As a result, she is referred to in the record as both Kidd's estranged wife and as his ex-wife.

At some point in the first half of 2002, A.H. told B.B.'s grandparents, and two other people, that Kidd had gotten into her sleeping bag and had rubbed her back, but she did not mention that he had intercourse with her.  B.B.'s grandmother did not share what A.H. had told her with anyone else until 2005, when she mentioned it to Tammy Kidd.  Ms. Kidd, in turn, notified the police.  In October of 2005, Officer Bart Merrill of the Meredith Police Department conducted a preliminary interview with A.H., which was followed by a formal taped interview conducted by Detective Denise Miller.

Based on the evidence adduced at his trial, which took place in September of 2006, Kidd was found guilty of sexually assaulting A.H.  He appealed his conviction to the New Hampshire Supreme Court, which affirmed.  Thereafter, Kidd filed a pro se motion for a new trial in the superior court, arguing that his trial attorney, Lee Topham, had provided him with ineffective assistance.  The court appointed Gary Apfel to represent Kidd on his motion for a new trial.  Attorney Apfel, in turn, filed a supplement to Kidd's pro se motion, also based exclusively on ineffective assistance of trial counsel.  Between them, Kidd and Attorney Apfel raised more than twenty grounds in support of Kidd's ineffective-assistance claim.  See Answer (doc. no. 17), Ex. E, at 1, 4, 6-7.

In the memorandum of law in support of his motion for a new trial, Attorney Apfel argued that Attorney Topham provided ineffective assistance by failing to: (1) cross examine A.H. about inconsistent statements; (2) object to the use of the term "victim" before the jury; (3) investigate or present a defense of erectile disfunction; and (4) permit Kidd to testify on his own behalf.  At the hearing on Kidd's motion, Attorney Apfel stated: "I also want to narrow the issues.  They're limited to the four that I've raised in my memo."  Hearing Tr., Jan. 20, 2009, at 9.  Judge Vaughan denied Kidd's motion for a new trial in a written order.  See Answer, Ex. D, at 12-22.

Kidd appealed Judge Vaughan's decision to the New Hampshire Supreme Court.  In his notice of appeal, he presented the four ineffective-assistance theories he had briefed prior to his hearing before Judge Vaughan.  In his supreme-court brief, he presented two questions: (1) "Did Mr. Kidd's trial attorney [Attorney Topham] provide ineffective assistance of counsel [by] failing to expose many discrepancies in witnesses' testimony?," Answer, Ex. G, at 1; and (2) "Did Mr. Kidd's trial attorney provide ineffective assistance of counsel [by] failing to object to the court's and the State's use of the word 'victim' during trial to refer to the complainant?," id.  The supreme court affirmed.  See Resp't's Mot. Summ. J., Ex. K (doc. no. 27-2).

5

Next, Kidd petitioned for a writ of habeas corpus in the
New Hampshire Superior Court.  In his petition, which he filed
pro se, Kidd stated:

> A hearing was held in front of Judge T. Vaughan, for a
> [n]ew [t]rial based on ineffective assistance of
> [c]ounsel.  13 legitimate issues where of [sic]
> ineffective assistance of counsel [were] up for
> possible argument.  Mr. Apfel argue[d] 4 of them, with
> the insight, "less is sometimes more."
>
> Two new overlooked issues that are very important
> would like to be brought up to this Honorable Court.
> Failure to subpoena witness on the Defendant's behalf.
> And [f]ailure to [i]mpeach witnesses against the
> State.

Doc. no. 14 ¶¶ 10-11 (punctuation and spacing corrected).  In
all, Kidd's petition to the superior court identified fifteen
grounds for his claim of ineffective assistance of counsel.  See
id. ¶¶ 15-29.  In his order denying Kidd's petition, Judge
Bornstein ruled that: (1) litigation of two of the grounds for
Kidd's ineffective-assistance claim was barred by res judicata;
(2) twelve more grounds had not been preserved for collateral
review; and (3) the remainder of Kidd's claim failed on the
merits.  On the merits, Judge Bornstein ruled that Kidd had
failed to establish that he was prejudiced by Attorney Topham's
failure to impeach A.H. and Tammy Kidd.  See doc. no. 13, at 12,
14.  Kidd appealed Judge Bornstein's decision to the New
Hampshire Supreme Court, which declined the notice of appeal.

As construed in my order of February 9, 2012, Kidd's petition consists of a claim of ineffective assistance of counsel based upon the following fourteen grounds:

1. Counsel (a) failed to cross-examine witnesses, (b) failed to adequately highlight discrepancies between out-of-court statements and testimony at trial, and (c) failed to impeach witnesses regarding changes in their statements, including both the victim's and Kidd's estranged wife's statements regarding the victim sleeping in a tent and whether others were told about the assault;

2. Counsel failed to object to the prosecutor's and trial court's use of the term "victim" during jury selection and at trial;

3. Counsel prohibited Kidd from testifying on his own behalf;

4. Counsel failed to request an independent medical examination of Kidd for possible erectile dysfunction, which Kidd asserts would have shown that if Kidd were intoxicated as the victim had testified, Kidd would not have been able to commit the assault;

5. Counsel failed to investigate a possible defense theory that a vindictive motive underlay Kidd's estranged wife's testimony;

6. Counsel failed to subpoena witnesses, as requested by Kidd, to testify to the vindictiveness of Kidd's estranged wife;

7. Counsel failed to introduce evidence of a letter that Kidd asserts would have shown that the victim had lied about the assault;

8. Counsel failed to object to a witness' statement that Kidd's estranged wife and his mother-in-law were in therapy, where that statement was prejudicial as it implied that their need for therapy resulted from the assault by Kidd, and was not related to their underlying diagnoses of depression;

9. Counsel failed to object to or otherwise control the volume of speech used in bench conferences, which allowed the jury to hear the substance of such conferences;

10. Counsel failed to show Kidd the responses provided by prospective jurors on a juror questionnaire, which prevented Kidd from providing input as to whether any particular juror might be biased;

11. Counsel failed to call Kidd's son's mother to testify to Kidd's erectile dysfunction when he is under the influence of alcohol;

12. Counsel failed to request an independent medical examination of the victim to show the absence of scarring or other medical evidence of an assault;

13. Counsel failed to seek medical records of the victim which would show that no examination of the victim occurred after the assault, for the purpose of proving that no assault occurred, because concerned parents would take their child to the doctor for an examination if they believed that an assault had occurred; and

14. Counsel failed to become aware of or attend to Kidd's need for medication for attention deficit hyperactivity disorder ("ADHD") at trial, such that Kidd had difficulty being assertive and focused at trial.

Order (doc. no. 11), at 2-4.

## Discussion

Respondent argues that he is entitled to judgment as a matter of law on the merits with respect to the first ten grounds on which Kidd's claim is based and also argues that the court is precluded from considering grounds three through ten because the issues on which those grounds are based have been procedurally defaulted. In the discussion that follows, the court considers, sequentially, each of the fourteen grounds on which Kidd bases his ineffective-assistance claim.

A. Ground One

As construed by the court, the first ground for Kidd's ineffective-assistance claim is that Attorney Topham:

> (a) failed to cross-examine witnesses, (b) failed to adequately highlight discrepancies between out-of-court statements and testimony at trial, and (c) failed to impeach witnesses regarding changes in their statements, including both the victim's and Kidd's estranged wife's statements regarding the victim sleeping in a tent and whether others were told about the assault.

Order (doc. no. 11), at 2.  Respondent argues that he is entitled to summary judgment because Attorney Topham's cross-examination was not unconstitutionally deficient.  With respect to ground one, respondent is entitled to summary judgment.

A criminal defendant claiming ineffective assistance of counsel, under the standard articulated in Strickland v. Washington, 466 U.S. 668 (1984), must "show both that his counsel provided deficient assistance and that there was prejudice as a result."  Harrington, 131 S. Ct. at 787; see also Wright v. Marshall, 656 F.3d 102, 108 (1st Cir. 2011) (citing Strickland, 466 U.S. at 687; Shuman v. Spencer, 636 F.3d 24, 31 (1st Cir. 2011)).  Turning to the first part of the Strickland analysis:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness."  [Strickland,] 466 U.S. at 688.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.  Id., at 689.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as

>the 'counsel' guaranteed the defendant by the Sixth
>Amendment."  Id., at 687.

Harrington, 131 S. Ct. at 787 (parallel citations omitted); see also Wright, 656 F.3d at 108.  In other words, "[j]udicial scrutiny of counsel's performance must be highly deferential." United States v. Valerio, 676 F.3d 237, 246 (1st Cir. 2012) (citation omitted).  That level of deference is intended "to avoid 'the distorting effects of hindsight' and allow [courts] 'to evaluate the conduct from counsel's perspective at the time.'"  United States v. Rodriguez, 675 F.3d 48, 56 (1st Cir. 2012) (citing Strickland, 466 U.S. at 689).

"With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Harrington, 131 S. Ct. at 787 (quoting Strickland, 466 U.S. at 694).  Thus, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'  Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  Harrington, 131 S. Ct. at 787-88 (quoting Strickland, 466 U.S. at 693, 687).

Finally, "the performance and prejudice components of the ineffectiveness inquiry are [both] mixed questions of law and

fact." _Valerio_, 676 F.3d at 246 (quoting _Strickland_, 466 U.S. at 689). Thus, "[t]he standard of review applied 'depends, in the last analysis, on the extent to which a particular question is fact-dominated or law-dominated.'" _Valerio_, 676 F.3d at 246 (quoting _Dugas v. Coplan_, 506 F.3d 1, 8 (1st Cir. 2007); citing _Pike v. Guarino_, 492 F.3d 61, 68 (1st Cir. 2007)).

The court begins its analysis by noting "the 'doubly' deferential standard that applies to a state prisoner's claims in a federal habeas petition that a state court has unreasonably applied the _Strickland_ principles." _Jewett v. Brady_, 634 F.3d 67, 75 (1st Cir. 2011) (citing _Harrington_, 131 S. Ct. 770). When ruling on a habeas petition claiming ineffective assistance of counsel, "[t]he pivotal question is whether the state court's application of the _Strickland_ standard was unreasonable [which] is different from asking whether defense counsel's performance fell below _Strickland_'s standard." _Harrington_, 131 S. Ct. at 785. The Court elaborated:

> "Surmounting _Strickland_'s high bar is never an easy task." _Padilla v. Kentucky_, 559 U.S. ----, ----, 130 S. Ct. 1473, 1485 (2010). . . .
>
> Establishing that a state court's application of _Strickland_ was unreasonable under § 2254(d) is all the more difficult. The standards created by _Strickland_ and § 2254(d) are both "highly deferential," _id._, at 689; _Lindh v. Murphy_, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, _Knowles_, 556 U.S., at ----, 129 S. Ct. at 1420. The _Strickland_ standard is a general one, so the range of reasonable applications is substantial. 556 U.S.,

at ----, 129 S. Ct. at 1420.  Federal habeas courts
must guard against the danger of equating unreason-
ableness under Strickland with unreasonableness under
§ 2254(d).  When § 2254(d) applies, the question is
not whether counsel's actions were reasonable.  The
question is whether there is any reasonable argument
that counsel satisfied Strickland's deferential
standard.

Harrington, 131 S. Ct. at 788 (parallel citations omitted).  As

the court of appeals for this circuit has explained Harrington,

"the 'pivotal question' in a federal collateral attack under

Strickland is . . . whether 'fairminded jurists' would all agree

that the [state court] decision was unreasonable." Jewett, 634

F.3d at 75 (citing Harrington, 131 S. Ct. at 785-86; Yarborough

v. Alvarado, 541 U.S. 652, 664, (2004)).  Viewed through the two

lenses of deference that must be employed in this case, the

court can see nothing in the state courts' assessments of

Attorney Topham's performance that warrants habeas relief for

the reasons identified in ground one.

The heart of ground one is Kidd's contention that

inconsistent statements made by A.H. and one or more of the

other witness, and in particular Tammy Kidd, provided Attorney

Topham with opportunities for cross examination and impeachment

that he should have taken, but did not.  In his appeal from

Judge Vaughan's decision to deny him a new trial, Kidd

identified eighteen discrepancies in the State's evidence that,

in his view, Attorney Topham erroneously failed to address, explore, and expose.

By "discrepancies," Kidd was referring to inconsistencies between the testimony of different witnesses and to differences between a witness's trial testimony and her previous out-of-court statements.  Those discrepancies concerned: (1) how many camping trips B.B.'s family took during the summer of 2001; (2) who went on the trip during which the assault took place; (3) whether A.H. and B.B. shared a tent; (4) whether, on the morning after the assault, A.H. and B.B. concluded that Kidd had entered the tent accidentally, because he was intoxicated; (5) what A.H. said she was wearing on the night of the assault; (6) what A.H. said Kidd was wearing that night; (7) what A.H. said about what part(s) of her body Kidd rubbed before he had intercourse with her; (8) what A.H. said about whether Kidd rubbed her back before he had intercourse with her; (9) what A.H. said about how Kidd handled her underwear before he had intercourse with her, i.e., sliding it over or pulling it down; (10) whether A.H. resisted Kidd's assault; (11) what A.H. said concerning when she told B.B. that Kidd had entered their tent, i.e., right after B.B. woke up or later on, after breakfast; (12) what A.H. said about where and when Kidd apologized to her, i.e., inside the tent after A.H. had spoken with B.B. or by the campfire, during breakfast; (13) when A.H. first disclosed that Kidd had

intercourse with her; (14) when A.H. first disclosed to anyone
other than B.B. that Kidd had gotten into her sleeping bag and
touched her; (15) what A.H. said about why she did not report a
rape; (16) whether A.H. wrote B.B. a letter the morning after
the assault; (17) the nature of A.H.'s relationship with B.B.'s
extended family after the assault; and (18) what A.H. said about
how much she actually remembered about the assault.

In rejecting Kidd's argument that Attorney Topham provided
him with ineffective assistance by failing to address the
foregoing discrepancies, the New Hampshire Supreme Court held:

> Having reviewed the record in this case, we
> conclude that the defendant has failed to overcome the
> presumption that his trial counsel's actions
> constituted acceptable trial strategy.  Defense
> counsel developed testimony addressing the
> inconsistencies highlighted in his opening statement
> and closing argument.  His decision as to whether to
> further highlight inconsistencies necessarily included
> consideration of whether the additional testimony
> would allow the State to offer otherwise inadmissible
> evidence and whether the jury might perceive him as
> being overly technical and aggressive.

Doc. no. 27-2, at 2 (citation omitted).

In his state habeas petition, Kidd brought up, as a new
issue, Attorney Topham's failure to impeach A.H. and Tammy Kidd
with prior inconsistent statements which, in Kidd's view, would
have proven that the allegations against him were both false and
part of a vindictive plot.  After ruling that Kidd had failed to

establish the prejudice element of his ineffective-assistance

claim, Judge Bornstein further explained:

> Petitioner claims that attorney Topham should
> have introduced A.H.'s and his ex-wife's inconsistent
> statements as to (1) whether A.H. was in her own tent
> or someone else's tent during the assault; and (2)
> when the friendship between A.H. and petitioner's
> stepdaughter ended.  Petitioner argues that if
> attorney Topham had impeached the witnesses with these
> inconsistencies, the jury would have seen that the
> charges against him were false and that they resulted
> from a conspiracy between Ms. Kidd and A.H.
> Petitioner has failed to connect how these particular
> inconsistent statements show that petitioner's ex-wife
> and A.H. conspired in the sexual assault allegations.
> Even if attorney Topham had highlighted these
> inconsistencies they would only minimally have
> affected the credibility of the witnesses.  Attorney
> Topham may have reached the same conclusion and
> therefore refrained from highlighting these
> discrepancies.

Doc. no. 13, at 14.

This court has little to add to the cogent analyses

articulated by the New Hampshire Supreme Court and Judge

Bornstein.  The primary evidence against Kidd was A.H.'s

testimony.  Counsel defending against sexual-assault charges

must tread carefully when cross examining an alleged victim, to

avoid arousing juror hostility.  Finding the line between

necessary cross examination and cross examination (or

impeachment) that is unproductive or counterproductive is a

quintessential judgment call entitled to judicial deference.

Here, Attorney Topham did cross examine A.H., and did

explore some discrepancies in her testimony, and between her

testimony and the other evidence.  He also inquired into several other sensitive areas, such as whether A.H. had found semen in her underwear the morning after the assault.  Attorney Topham did not, however, inquire into every discrepancy available to him.  By exercising restraint, he appears to have decided reasonably, and probably wisely, not to badger A.H. with cross-examination on minor and easily explainable discrepancies in her testimony on topics that were not all that material.  In any event, it is not for this court to second guess the reasonable determinations made by the New Hampshire Supreme Court and Judge Bornstein that Attorney Topham's cross examination of A.H. did not fall outside the boundaries of adequate representation.

With regard to Tammy Kidd, and Kidd's claim that Attorney Topham failed to adequately impeach her, it is not at all clear how Kidd would have benefited from the impeachment he now says Attorney Topham should have undertaken, given the relatively limited nature of Ms. Kidd's testimony.  As with the rulings on Kidd's claim that Attorney Topham's cross examination of A.H. was constitutionally deficient, this court must defer to Judge Bornstein's reasonable determination that Kidd was not prejudiced by Attorney Topham's decision not to impeach Tammy Kidd.

In sum, Kidd has failed, by a wide margin, to establish that fairminded jurists would all agree that the New Hampshire

state courts unreasonably applied the <u>Strickland</u> standard to the ineffective-assistance claims Kidd asserts in ground one of his petition.  See <u>Jewett</u>, 634 F.3d at 75.  Accordingly, to the extent Kidd's ineffective-assistance claim rests on ground one, respondent is entitled to summary judgment.

### B. Ground Two

As construed by the court, the second ground for Kidd's ineffective-assistance claim is that Attorney Topham:

> failed to object to the prosecutor's and trial court's use of the term "victim" during jury selection and at trial.

Order (doc. no. 11), at 2.  Kidd raised that issue in his motion for a new trial, and the New Hampshire Supreme Court addressed it on appeal.  In its opinion affirming Judge Vaughan's denial of Kidd's new-trial motion, the supreme court noted several instances in which the word "victim" was used by the trial court and one instance in which it was used by the prosecutor.  Then, after noting that it had "never held that use of the term 'victim' by a trial court is error," doc. no. 27-2, at 2, the court explained its decision that Attorney Topham had not provided ineffective assistance by failing to object to use of the term:

> Throughout the trial, the jury was instructed that the State had the burden to prove that an offense had occurred and that it was the jury's function to determine the facts of the case.  Based upon the record before us, we conclude that even if it was error to fail to object, prejudice is not, for that reason alone, established. Failure to object does not meet the prejudice component

of the ineffectiveness challenge.  On this record, we
cannot conclude that there is a reasonable probability
that had counsel objected to use of the term "victim,"
and had the court sustained the objection, the result of
the proceedings would have been different.

Id.

Kidd was convicted at the end of a trial at which A.H.
testified, unambiguously, that he had intercourse with her when she
was eleven years old.  No fairminded jurist could conclude that the
New Hampshire Supreme Court unreasonably determined that, but for
Attorney Topham's failure to object to the use of the word victim
to describe A.H., there is a reasonable probability that the jury
would have acquitted Kidd.  There is little or nothing that the
court might have said in a curative instruction that it did not
tell the jury at multiple points during the trial.[2]  Because Kidd
can prevail on his ineffective-assistance claim only if all
fairminded jurists would agree that the supreme court ruled

---

[2] For example, in response to Attorney Topham's objection to
Officer Merrill's testimony that he arranged Detective Miller's
formal interview with A.H. after he "determined that the crime
had actually occurred," Trial Tr., Day Two, at 50, Judge Groff
instructed the jury as follows:

    Folks, you've heard some testimony recently and
    I'm going to strike that testimony.  The witness
    testified about a crime being committed.  That's for
    you folks to determine after you've heard all the
    evidence.  This officer doesn't determine whether a
    crime was committed, you do.

Id. at 52.  Similarly, in his charge to the jury, Judge Groff
explained: "It is up to you . . . to decide the facts of this
case.  You must decide the facts solely from the evidence which
has been presented in this trial."  Id. at 90.

unreasonably, see Jewett, 634 F.3d at 75, to the extent that Kidd's ineffective-assistance claim rests on ground two, respondent is entitled to summary judgment.

### C. Grounds Three and Four

Kidd's contentions that Attorney Topham performed ineffectively by preventing him from testifying (ground three) and by failing to request an independent medical examination for erectile disfunction (ground four) were: (1) raised in his motion for a new trial;[3] (2) briefed prior to the hearing on that motion; (3) argued at the hearing; (4) rejected by Judge Vaughan in his order on Kidd's motion; (5) raised in Kidd's notice of appeal from Judge Vaughan's decision, but not briefed in the supreme court; (6) raised in Kidd's petition for habeas-corpus relief in state court; and (7) rejected by Judge Bornstein because Kidd failed to preserve them for collateral review. Respondent moves for summary judgment with regard to grounds three and four, arguing that those issues have been procedurally defaulted.  That argument is meritorious.

"A federal court will not consider a federal habeas claim 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"  Jewett, 634 F.3d at 76 (quoting

---

[3] These issues were raised both in Kidd's pro se motion and in the supplement later filed by Attorney Apfel.

Walker v. Martin, 131 S. Ct. 1120, 1127 (2011); citing Beard v. Kindler, 130 S. Ct. 612, 614 (2009)).  "This independent and adequate state grounds doctrine 'is grounded in concerns of comity and federalism.'"  Costa v. Hall, 673 F.3d 16, 23 (1st Cir. 2012) (quoting Coleman v. Thompson, 501 U.S. 722, 730 (1991)).

"Procedural default of federal claims in state court is an independent and adequate state-law ground barring habeas relief, so long as the state regularly follows the [default] rule and has not waived it by relying on some other ground."  Jewett, 634 F.3d at 76 (citing Walker, 131 S. Ct. at 1127; Lynch v. Ficco, 438 F.3d 35, 44 (1st Cir. 2006); Horton v. Allen, 370 F.3d 75, 80-81 (1st Cir. 2004)).  Procedural default occurs "where a state court has 'declined to address [a prisoner's federal] claims because the prisoner . . . failed to meet a state procedural requirement.'"  Costa, 673 F.3d at 23 (quoting Maples v. Thomas, 132 S. Ct. 912, 922 (2012); citing Walker, 131 S. Ct. at 1127).  A claim is also procedurally defaulted "if it was not presented to the state courts and it is clear that those courts would have held the claim procedurally barred."  Pike, 492 F.3d at 73 (citing Coleman, 501 U.S. at 735 n.1; Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004)).

"[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has

deprived the state courts of an opportunity to address those claims in the first instance." Costa, 673 F.3d at 23 (quoting Edwards v. Carpenter, 529 U.S. 446, 451 (2000); citing Coleman, 501 U.S. at 732). "Thus, a petitioner must demonstrate cause for any state-court procedural default of federal claims, and prejudice therefrom, before the federal courts may consider the merits of those claims." Costa, 673 F.3d at 23 (citation omitted). Finally, "[t]he procedural default doctrine and its attendant cause and prejudice standard . . . apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack." Costa, 673 F.3d at 25 (quoting Edwards, 529 U.S. at 451; citing Murray v. Carrier, 477 U.S. 478, 490–91 (1986)).

Here, Kidd's claims that Attorney Topham provided ineffective assistance by preventing him from testifying and by failing to request an independent medical examination for possible erectile disfunction have been procedurally defaulted. Kidd raised those issues in his notice of appeal from Judge Vaughan's denial of his motion for a new trial, but he did not brief either of them. When considering Kidd's state petition for habeas-corpus relief, Judge Bornstein determined that grounds three and four had not been adequately preserved for collateral review, and he did so in conformity with the New Hampshire Supreme Court's well-established practice of deeming

to be waived any "issues [a party] raise[s] in his notice of
appeal but [does] not brief," State v. Mwangi, 161 N.H. 699, 707
(2011) (citing State v. Kelley, 159 N.H. 449, 455 (2009)).  In
other words, Judge Bornstein declined to address those grounds
because Kidd had "failed to meet a state procedural
requirement," Costa, 673 F.3d at 23, which is one of the two
ways in which procedural default occurs.  Moreover, had Kidd
attempted to present claims based on those grounds to the New
Hampshire Supreme Court after failing to brief them, that court,
too, would have held them to be barred.  See Walbridge v. Estate
of Beaudoin, 163 N.H. 804, 806 (2012) ("All issues raised in the
petitioner's notice of appeal, which she did not brief, are
deemed waived.") (citing In re Estate of King, 149 N.H. 226, 230
(2003)).  Therefore, even if Kidd had not filed the state habeas
petition that resulted in Judge Bornstein's determination that
the issues raised in grounds three and four had been
procedurally defaulted, he would still be barred from seeking
relief in this court based on grounds three and four.  See Pike,
492 F.3d at 73.

     That grounds three and four have been procedurally
defaulted is not quite the end of the story; a procedural
default may be excused if a petitioner is able to demonstrate
cause and prejudice.  See Costa, 673 F.3d at 23.  Rather than
attempting to demonstrate cause and prejudice for his procedural

default, Kidd appears to argue that there was no procedural

default in the first instance.

Specifically, in his objection to summary judgment, he

argues:

> Appellate Attorney Joshua Gordon raise[d] only two of
> the 4 issues of ineffective assistance of counsel.
> Petitioner raise[d] all issues in Coos County, No.
> 2010-cv-156 and supreme court to preserve all the
> issues that [were] not raised in the [m]otion for [a]
> new trial, to show the many areas of ineffective
> assistance of counsel that fell well below the
> standard of representation.
>
> . . . .
>
> Petitioner did not abandon any of the issues of
> ineffective assistance of counsel.  He simply chose to
> let the attorney raise the most obvious claims because
> he also felt comfortable having the expert testify
> [that] Attorney [Topham] fell below the standard of
> representation.
>
> . . . .
>
> All the claims of ineffective assistance of counsel
> [were] preserved when raised in Coos County and the
> Supreme Court [i]n 2011.

Pet'r's Obj. (doc. no. 28) ¶¶ 7, 12, 31 (punctuation corrected).

Kidd's attempt to avoid procedural default is without

merit.  He is bound by the decisions that Attorney Apfel made

when litigating his motion for a new trial and the decisions

that Attorney Joshua Gordon made when pursuing Kidd's appeal

from Judge Vaughan's denial of that motion.  Moreover, Kidd did

not revive the issues abandoned by Attorneys Apfel and Gordon by

listing them in his state habeas petition or his notice of

appeal from the denial of that petition.  To be sure, an

otherwise procedurally defaulted claim can be revived, but only

when it has been both re-introduced by a petitioner and

addressed by a subsequent state court, notwithstanding the fact

that it had been procedurally defaulted.  See Ylst v.

Nunnemaker, 501 U.S. 797, 801 (1991) ("State procedural bars are

not immortal . . . they may expire because of later actions by

state courts.  If the last state court to be presented with a

particular federal claim reaches the merits, it removes any bar

to federal-court review that might otherwise have been

available.") (citing Harris v. Reed, 489 U.S. 255, 262 (1989)).

Here, however, none of Kidd's abandoned claims were ever revived

by post-abandonment consideration in the state courts.  Thus,

all the claims he abandoned were procedurally defaulted.

    Finally, even if the court were to construe paragraphs

seven, twelve, and thirty-one of Kidd's objection to summary

judgment as an attempt to establish cause and prejudice for his

procedural default, any such argument would fail.  As the court

of appeals has explained:

> Cause for procedural default "must ordinarily turn on
> whether the prisoner can show that some objective
> factor external to the defense impeded counsel's
> efforts to comply with the State's procedural rule."
> Carrier, 477 U.S. at 488; see also Reed v. Ross, 468
> U.S. 1, 16 (1984).  This could include a showing that
> "the factual or legal basis for a claim was not
> reasonably available to counsel," Carrier, 477 U.S. at
> 488, or that there was "some interference by

> officials," id. (quoting Brown v. Allen, 344 U.S. 443,
> 486 (1953)) (internal quotation marks omitted).  Costa
> argues that his attorneys simply did not recognize
> that an amenability argument could be made on the
> basis of Storella's inconsistent testimony.  However,
> that counsel simply "failed to recognize the factual
> or legal basis for a claim" does not in and of itself
> "constitute cause for a procedural default."  Gunter
> [v. Maloney], 291 F.3d [74,] 82 n.2 [(1st Cir. 2002)]
> (quoting Carrier, 477 U.S. at 486) (internal quotation
> mark omitted).

Costa, 673 F.3d at 25. (parallel citations omitted).  Kidd's

counsel's strategic decisions can hardly be counted as objective

factors external to the defense.  Moreover, while "[d]eficiency

by counsel rising to the level of constitutionally ineffective

assistance under Strickland can serve as cause to excuse the

procedural default of another habeas corpus claim," Yeboah-Sefah

v. Ficco, 556 F.3d 53, 75 (1st Cir. 2009) (citing Edwards, 529

U.S. at 451), Kidd does not argue that either Attorney Apfel or

Attorney Gordon provided him with ineffective assistance when

they made their decisions to limit the arguments they chose to

develop.[4]  Consequently, Kidd has not established cause for his

procedural default.

The issues underlying grounds three and four were

procedurally defaulted.  Kidd has not demonstrated a legally

---

[4] And, any such argument would almost certainly fail, at
least as to Attorney Gordon, because "the process of winnowing
out weaker claims on appeal and focusing on those more likely to
prevail, far from being evidence of incompetence, is the
hallmark of effective appellate advocacy."  Burger v. Kemp, 483
U.S. 776, 784 (1987) (quoting Smith v. Murray, 477 U.S. 527, 536
(1986)) (internal quotation marks omitted).

sufficient cause for his default.  Accordingly, to the extent
that Kidd's ineffective-assistance claim rests on grounds three
and four, respondent is entitled to summary judgment.

### D. Ground Five

As construed by the court, the fifth ground for Kidd's
ineffective-assistance claim is that Attorney Topham "failed to
investigate a possible defense theory that a vindictive motive
underlay [Tammy] Kidd's . . . testimony."  Order (doc. no. 11),
at 3.  Respondent argues, correctly, that the issue raised in
ground five has been procedurally defaulted.

No claim along the lines of ground five appears in Kidd's
pro se motion for a new trial.  Paragraph 5.A. of Attorney
Apfel's supplement lists, as a "possible claim," the following:
"[f]ailure to investigate or present evidence that the
complainant falsified her allegations as part of a conspiracy to
retaliate against Mr. Kidd for terminating his marriage to Tammy
Kidd."  Answer, Ex. E, at 6.

In support of his motion for a new trial before Judge
Vaughan, Kidd did not brief or argue either: (1) a claim based
on Attorney Topham's failure to investigate or pursue a theory
of defense based on a vindictive motive that tainted Tammy
Kidd's testimony; or (2) a claim that A.H. made false
allegations against him as a result of a conspiracy involving

Ms. Kidd.  Neither theory was included in Kidd's notice of appeal from Judge Vaughan's decision, nor was either theory briefed in the New Hampshire Supreme Court.

In his state-court petition for habeas relief, Kidd advanced the following claim:

> Failure to investigate [a] conspiracy to retaliate against Mr. Kidd.
>
> a) Mrs. Kidd was told that Mr. Kidd was cheating on her again with visits from other women, while he was incarcerated.  Mrs. Kidd is a vindictive woman and has said, in a letter to Mr. Kidd, "If I can't have you, no one will"!

Doc. no. 14 ¶ 21 (punctuation and spacing corrected).  Finally, in his notice of appeal from Judge Bornstein's decision, Kidd raised this issue:

> 3.   A. Issue: Whether Mr. Kidd was denied [effective] assistance of counsel when trial counsel failed to investigate [a] [c]onspiracy to retaliate against Mr. Kidd for ending his marriage, because he conceived a child with her friend.
>
> B. Accepted Criteria: Mr. Topham chose implausibility as the defense, instead of showing the court the motive of this complainant['] actions for perjury.

Doc. no. 15, at 8 (punctuation and spacing corrected).

While it is not perfectly clear, it seems beyond reasonable doubt that the claims stated in paragraph 5.A. of Attorney Apfel's supplement, paragraph 21 of Kidd's state habeas petition, and paragraph 3 of his notice of appeal from Judge Bornstein's decision are one and the same.  Moreover, those

three paragraphs state the claim identified as ground five in this court's order of February 9.  While Judge Bornstein did devote some attention to Kidd's conspiracy theory in his order denying Kidd's petition for habeas relief, he did so in the context of Kidd's failure-to-impeach claim rather than a claim that Attorney Topham failed to undertake an adequate investigation into Tammy Kidd's antipathy toward Kerry Kidd. The failure-to-investigate claim, according to Judge Bornstein, was not preserved for collateral review as a result of Kidd's failure to argue it to Judge Vaughan or present it to the New Hampshire Supreme Court.  As a result of Judge Bornstein's ruling, the issue on which ground five is based was procedurally defaulted.  See Costa, 673 F.3d at 23.  For that reason, and because Kidd has not demonstrated a legally sufficient cause for his procedural default, to the extent that Kidd's ineffective-assistance claim rests on ground five, respondent is entitled to summary judgment.

### E. Ground Six

As construed by the court, the sixth ground for Kidd's ineffective-assistance claim is that Attorney Topham "failed to subpoena witnesses, as requested by Kidd, to testify to the vindictiveness of Kidd's estranged wife."  Order (doc. no. 11),

at 3.  Respondent argues, correctly, that the issue raised in ground six has been procedurally defaulted.

In his pro se motion for a new trial, Kidd asserted that Attorney Topham "failed to subpoena witnesses on his behalf to prove major contradictions in the State[']s case."  Answer, Ex. E, at 1.  Attorney Topham's failure to subpoena witnesses was neither briefed by Attorney Apfel nor argued at the hearing before Judge Vaughan.  Similarly, that issue was neither presented in Kidd's notice of appeal from Judge Vaughan's decision nor briefed in the state supreme court.  In his state habeas petition, Kidd asserted that Attorney Topham "[f]ail[ed] to [s]ubpoena witnesses for the defendant," doc. no. 14 ¶ 28,[5] and elaborated: "Mr. Topham did not subpoena anyone for Mr. Kidd's defense, so the jury heard only one side of the story, and not the truth," id.

This court's February 9 order phrases the failure-to-subpoena issue slightly differently from the way it was

---

[5] Earlier in his petition, Kidd characterized Attorney Topham's failure to subpoena witnesses as a new and overlooked issue.  See doc. no. 14 ¶ 11.  That characterization of the subpoena claim is difficult to square with that fact that in his motion for a new trial, Kidd claimed that his trial "[a]ttorney failed to subpoena witnesses on his behalf to prove major contradictions in the State[']s case," Answer (doc. no. 17), Ex. E, at 1.  Indeed, Judge Bornstein recognized the fallacy of Kidd's characterization: "Although petitioner characterizes his allegation that attorney Topham failed to subpoena a witness on [his] behalf as a new ground, he previously raised this issue in his motions for a new trial."  Doc. no. 13, at 4.

expressed in Kidd's motion for a new trial, focusing on evidence
of the alleged vindictiveness of Tammy Kidd rather than on
evidence demonstrating contradictions in the State's case.  But,
the fact remains that in his order on Kidd's state habeas
petition, which framed the failure-to-subpoena issue broadly,
Judge Bornstein declined to treat the issue as new to the case,
and ruled that it had not been preserved for collateral review,
due to Kidd's failure to pursue it before Judge Vaughan and his
failure to present it to the New Hampshire Supreme Court.  Thus,
the issue was procedurally defaulted.  See Costa, 673 F.3d at
23.  For that reason, and because Kidd has not demonstrated a
legally sufficient cause for his procedural default, to the
extent that Kidd's ineffective-assistance claim rests on ground
six, respondent is entitled to summary judgment.

    F. Ground Seven

    As construed by the court, the seventh ground for Kidd's
ineffective-assistance claim is that Attorney Topham "failed to
introduce evidence of a letter that Kidd asserts would have
shown that the victim had lied about the assault."[6]  Order (doc.

---

[6] The letter at issue was written five years after the
assault, by Kidd's stepdaughter, B.B., and it discusses her
recollection of what A.H. told her, the morning after the
assault, about Kidd's entry into the tent in which A.H. and B.B.
were sleeping.

no. 11), at 3.  Respondent argues, correctly, that the issue
raised in ground seven has been procedurally defaulted.

In his pro se motion for a new trial, Kidd asserted that
Attorney Topham "was unfamiliar with the Discovery."  Answer,
Ex. E, at 1.  In his response to the State's objection to his
motion, Kidd said that Attorney Topham "failed to submit the
letter [B.B.] wrote, which states that they [i.e., B.B. and
A.H.] did NOT talk about [the alleged assault] the next
morning."  Id. at 4 (spacing corrected).  Attorney Topham's
failure to introduce the allegedly exculpatory letter was
neither briefed by Attorney Apfel nor argued at the hearing
before Judge Vaughan.  Similarly, that issue was neither
presented in Kidd's notice of appeal from Judge Vaughan's
decision nor briefed in the state supreme court.[7]

It is somewhat unclear whether Kidd raised Attorney
Topham's failure to introduce B.B.'s letter in his petition for
a writ of habeas corpus in state court.  None of the fifteen
grounds listed in his state-court petition mentions the letter,
which suggests that claim seven was not raised in the state-
court petition.

But, in his petition to this court, the issue the court
identifies as ground seven is stated in the following way:

_____

[7] That issue was, however, presented in Kidd's notice of
appeal from Judge Bornstein's decision, so it was properly
exhausted.

31

7. FAILURE TO FAMILIARIZE THE DISCOVERY MATERIALS.

     Mr. Topham never show[ed] the jury the letter
written by the Defendant['] s step daughter that proves
[A.H.] lied about the assault.

Pet. (doc. no. 1), at 6.  Given that Kidd uses Attorney Topham's

failure to show B.B.'s letter to the jury as an example of his

failure to familiarize himself with the discovery materials, it

would be reasonable to construe paragraph twenty-seven of his

state habeas petition, which alleges "[f]ailure to establish

sufficient familiarity with the discovery materials," as

asserting an argument based on Attorney Topham's failure to

introduce the allegedly exculpatory letter.[8]  In other words,

Kidd's state habeas petition may be reasonably understood as

raising ground seven before Judge Bornstein.  If ground seven

---

    [8] As an aside, the court notes that the letter seems less
than exculpatory.  B.B. did not write that A.H. told her that
Kidd had not assaulted her.  Rather, B.B. reported:

    In the morning I woke up and remember [A.H.] telling
    me Kerry had come into the tent during the night.  I
    really didn't think anything of it at the time because
    she didn't go into detail on it.  We passed it off as
    him being drunk and finding the wrong tent.

Doc. nos. 25-4 & 25-5.  She also reported:

    One day [A.H.] came over for a few hours and we
    were setting in the camper just talking.  We got on
    the subject of Kerry and she told me that the night of
    our camping trip, he had climbed into her sleeping bag
    and was rubbing her chest.

Doc. no. 25-5.  Given the content of B.B.'s letter, it is
difficult to see how it would have done much to support Kidd's
defense.

was asserted in Kidd's state habeas petition, then Judge
Bornstein's determination that it was not preserved for
collateral review consigns ground seven to the same resolution
as grounds three, four, five, and six, i.e., dismissal due to
procedural default.  See Costa, 673 F.3d at 23.

If, on the other hand, Kidd did not raise ground seven in
his state habeas petition then, necessarily, Judge Bornstein did
not determine that Kidd had waived his claim concerning B.B.'s
letter.  But, as the court has explained, a claim is
procedurally defaulted either when a state court declines to
address it, see Costa, 673 F.3d at 23, or if it was not
presented to the court, but that court "would have held the
claim procedurally barred," Pike, 492 F.3d at 73.  Given Judge
Bornstein's reliance on the various procedural bars in declining
to review most of the claims Kidd raised in his petition, this
court has no difficulty concluding that Judge Bornstein would
have applied those same bars to ground seven.  Thus, ground
seven was procedurally defaulted.

Beyond that, if Kidd had attempted to pursue the issue
underlying ground seven in his appeal from Judge Vaughan's
decision, the New Hampshire Supreme Court would certainly have
deemed that claim to have been waived, see Pike, 492 F.3d at 73,
for the following three reasons.  First, Kidd did not argue that
issue before Judge Vaughan, and the New Hampshire Supreme Court

generally declines to address claims not argued in the trial court.  See J&M Lumber & Constr. Co. v. Smyjunas, 161 N.H. 714, 718 (2011) (citing Bean v. Red Oak Prop. Mgmt., Inc., 151 N.H. 248, 250 (2004) ("It is a long-standing rule that parties may not have judicial review of matters not raised in the forum of trial.")).  Second, Kidd did not present that issue in his notice of appeal from Judge Vaughan's decision, and in New Hampshire, "[a]ppellate questions not presented in a notice of appeal are generally considered waived by [the supreme] court," Progressive N. Ins. Co. v. Argonaut Ins. Co., 161 N.H. 778, 784 (2011) (citing Lassonde v. Stanton, 157 N.H. 582, 587 (2008)); see also N.H. Ball Bearings, Inc. v. Jackson, 158 N.H. 421, 436 (2009) (declining to review issue not presented in notice of appeal) (citing Guyotte v. O'Neill, 157 N.H. 616, 623 (2008)).  Third, Kidd did not brief that issue in the state supreme court, which would have foreclosed review in that forum.  See Walbridge, 163 N.H. at 806.

To summarize, whether or not Kidd raised the issue underlying ground seven in his state habeas petition, that issue has been procedurally defaulted, and Kidd has not demonstrated a legally sufficient cause for his procedural default.  Thus, to the extent that Kidd's ineffective-assistance claim rests on ground seven, respondent is entitled to summary judgment.

G. Grounds Eight, Nine, and Ten

Kidd's claims that Attorney Topham performed ineffectively by failing to object to a witness's statements about Tammy Kidd's therapy (ground eight), by failing to object to the loudness of conferences at sidebar (ground nine), and by failing to show him the jury questionnaires prior to jury selection (ground ten) were: (1) raised in his motion for a new trial;[9] (2) neither briefed by his counsel nor argued at the hearing on the motion; (3) neither presented in Kidd's notice of appeal from Judge Vaughan's decision, nor briefed in the supreme court; (4) raised in Kidd's state habeas petition; and (5) rejected by Judge Bornstein on grounds that Kidd failed to preserve them for collateral review.  Respondent argues, correctly, that the issues raised in grounds eight, nine, and ten have been procedurally defaulted.

As with grounds three, four, five, and six, Judge Bornstein's determination that grounds eight, nine, and ten had not been preserved for collateral review seals the fate of those issues in this court.  See Costa, 673 F.3d at 23.  Moreover, while those three grounds would have been deemed waived by the New Hampshire Supreme Court in an appeal from Judge Vaughan's

---

[9] Grounds eight and ten were not raised in Kidd's pro se motion, but were raised in Attorney Apfel's supplement.  Ground nine was raised in both Kidd's pro se motion and in Attorney Apfel's supplement.

decision, due to Kidd's failure to brief them, see Walbridge,
163 N.H. at 806, they were also procedurally defaulted because
Kidd failed to present them in his notice of appeal, see
Progressive, 161 N.H. at 784.  Finally, because Kidd neither
briefed nor argued grounds eight, nine, and ten before Judge
Vaughan, the supreme court would have declined to address those
claims if Kidd had attempted to raise them in his appeal from
Judge Vaughan's decision.  See J&M Lumber, 161 N.H. at 718.
Thus, grounds eight, nine, and ten have been procedurally
defaulted in several ways, and Kidd has not demonstrated a
legally sufficient cause for his procedural default.
Accordingly, to the extent that Kidd's ineffective-assistance
claim rests on those grounds, respondent is entitled to summary
judgment.

### H. Grounds Eleven through Fourteen

In his answer to Kidd's petition to this court, respondent
noted this court's determination that the petition identified
fourteen grounds for Kidd's ineffective-assistance claim.  But,
in his memorandum of law, respondent "asks for summary judgment
on procedural grounds on eight of the ten claims recognized by
this Court."  Doc. no 27-1, at 2.  At several other points in
his memorandum, respondent refers to ten claims, and he never
mentions grounds eleven through fourteen in any way.  See id. at

1, 8-9, 16.  Evidently, in preparing his summary judgment
papers, respondent was working from the list of ten grounds
included in document no. 9, rather than the list of fourteen
grounds included in document no. 11.[10]  As a general rule, courts
grant only the relief requested of them, and there is nothing in
this case that inspires the court to deviate from that
principle.  Because respondent has not requested summary
judgment with respect to the final four grounds supporting
Kidd's ineffective-assistance claim, I cannot recommend that
respondent be granted summary judgment on that portion of Kidd's
claim.

### Conclusion

For the reasons described above, I recommend that
respondent's motion for summary judgment, document no. 27, be
granted, with the result that this case now consists of a claim
for ineffective assistance of counsel, based on grounds eleven
through fourteen, as listed in this court's order of February 9,
2012.  Because my recommended disposition of respondent's motion
does not entirely resolve this case, there is no need, at this

---

[10] Moreover, while respondent argues that litigation of all
but two of Kidd's grounds is barred for procedural reasons, he
also addresses those claims on the merits, and discusses eight
claims, rather than twelve, lending further credence to the idea
that he based his motion for summary judgment on document no. 9
rather than document no. 11.

point, to make a recommendation as to whether a certificate of appealability should issue.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge


October 15, 2012

cc:  Kerry Kidd, pro se
     Elizabeth C. Woodcock, Esq.